[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON REARGUMENT OF ORDER OVERRULINGPLAINTIFF'S OBJECTION TO NOTICE OF DEFENSES
CT Page 5649
On July 14, 1995, The plaintiff, Vincent Turcio, filed this six count complaint against the New Haven Police Department, New Haven Police Officer James Grasso, and the City of New Haven. The plaintiff's first, second and fourth counts are directed toward the defendant Grasso and allege, respectively, intentional assault and battery in violation of the plaintiff's federal and state constitutional rights, negligent assault and battery, and a violation of General Statutes § 52-557n. The plaintiff's third count against the City of New Haven alleges that the defendant negligently hired and supervised Grasso. Counts five and six, against the New Haven Police Department, allege respectively, the negligent hiring and supervising of the defendant Grasso, as well as a violation of General Statutes § 52-557n.
On August 21, 1995, the defendants filed an answer and five special defenses to the plaintiff's complaint. In response, the plaintiff filed a request to revise the defendants' special defenses and the defendants objected to the requested revisions of the First and Fifth special defenses. At this point, the procedural history of the case begins to get complicated.
The court (Gray, J.) overruled the defendants' objection to the request to revise on November 4, 1995. On November, 26, 1996, over one year later, the plaintiff filed a motion for default for failure to plead. In response, the undersigned declined to default the defendants and instead ordered them to comply with the request to revise the special defenses by December 26, 1996, adding that if they failed to do so, a default would enter upon the filing of a renewed motion for default referencing the instant order. The defendants filed a "revised" answer and special defenses on December 10, 1996, as ordered by the court.[1]
The plaintiff filed another motion for default for failure to plead on December 16, 1996, stating that the defendants had CT Page 5650 failed to comply adequately with the court order dated November 4, 1995, in that the defendants' special defense of qualified immunity "merely repeats, verbatim, the same special defense that was to be revised." On February 18, 1997, filed a motion for sanctions for failure to comply with the November 4, 1995 court order. Neither motion was ruled upon.
On February 27, 1997, the defendants filed a purported compliance that included the special defense of qualified immunity in newly worded form. Nonetheless, the plaintiff on March 7, 1997, filed a second motion for sanctions for failure to comply with an order of the court (referencing Judge Gray's original overruling of the defendants' objection to the request to revise). The court (Gray, J.) granted, after a hearing on April 14, 1997, the plaintiffs' motion for sanctions and defaulted all three defendants. The court also ordered that the defendants' "revised" special defense of qualified immunity, filed February 27, 1997, be stricken. The court did refuse, however, to award costs to the plaintiff for its preparation of the February 18, 1997 motion for sanctions. Notice of the court's order was sent on April 16, 1997. On April 23, 1997, the defendants filed a motion to open the default which the court (Gray, J.) granted on May 27, 1997 under the apparently mistaken belief that no opposition to the motion had been filed.[2] The plaintiff filed a motion to reargue the motion to open the default on June 10, 1997, which the court granted, and a hearing was held on August 18, 1997.
At the conclusion of the August 18, 1997 hearing, Judge Gray vacated his previous order opening the default, sustained the plaintiff's objection, and denied the defendants' motion to open the default. In response, the defendants' filed a notice of defenses pursuant to Practice Book §§ 367 and 368 (now §§ 17-34 and 17-35) on August 26, 1997.[3] The plaintiff objected to this filing by way of motion and accompanying memorandum of law. He argued that the ten day time requirement for the filing of a notice of defenses after the entry of a default, pursuant to what is now Practice Book § 17-35, runs from the date the original default enters (April 14, 1997), and not from any subsequent date with respect to the default order's procedural history (in this case, the reinstatement of the default on August 18, 1997 following the mistaken opening of the default on May 27, 1997).
This court overruled the plaintiff's objection to notice of CT Page 5651 defenses on the papers on December 28, 1997. Subsequently, the plaintiff filed a motion for reargument. The undersigned granted this motion and heard reargument on March 2, 1998, reserving judgment with respect to the plaintiff's objection to the defendants' notice of defenses. As permitted by Practice Book § 11-10 (formerly 204), the plaintiff has filed a memorandum of law in support of its objection to the notice of defenses, and the defendants have filed a memorandum in opposition.
"Pursuant to [Practice Book § 17-34], a defaulted defendant who files a timely notice of defenses can contradict the allegations of the complaint and prove matters of defense in addition to contesting the amount of damages." Whalen v. Ives,37 Conn. App. 7, 20, 654 A.2d 798, cert. denied, 233 Conn. 905,657 A.2d 645 (1995) "In order to obtain this extraordinary relief, the defendant must act within ten days of notice of a default in all actions where there may be a hearing in damages . . . Practice Book § [17-35]. A party who allows the ten day period from the notice of a default to expire without filing a notice of defenses does so at his peril." (Internal quotation marks omitted; emphasis in original.) Id.
In the present case, the defendants' failure to file a notice of defenses within the ten days following their notice of the default order entered on April 14, 1997, prohibits the defendants from filing a notice of defenses on August 26, 1997. It is undisputed that the defendants were defaulted on April 14, 1997 for failure to comply with a court order, and that notice of the default was sent on April 16, 1997. Thus, under the plain language of Whalen and Practice Book §§ 17-34 and 35, the defendants had ten days to file their notice of defenses after they received notice of the default. Their failure to do so within the ten days following April 16, 1997 prohibited any future filing of a notice of defenses.
The filing of a notice of defenses is best viewed as a precautionary measure, and the defendants' decision to forego that precaution was undertaken at their own peril. See Whalen v.Ives, supra, 37 Conn. App. 20. As the defendants had no way of knowing, at the time the default entered on April 14, 1997, whether the default would ever be opened, they should have protected their interests and filed a notice of defenses. Instead, the defendants opted both to reserve their right to appeal the court's decision, and to file a motion to open the CT Page 5652 default order. Ten days having then passed with the filing of the notice, the plaintiff's objection to the defendant's notice of defenses must be sustained.
This conclusion, although it does answer the question immediately before the court, does not necessarily end its inquiry. A review of the entire record reveals that the default entered against the defendants as a sanction for their failure to comply with the court's order to revise their special defenses may have been unwarranted[4], and this court has an obligation to reconsider the defendant's earlier timely motion to open the default against them.[5]
"`The law of the case [doctrine] expresses the practice of judges generally to refuse to reopen what has been decided and it is not a limitation on their power. . . . Where a matter has previously been ruled upon interlocutory, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided. . . .'" Lewis v. Gaming Policy Board,224 Conn. 693, 697, 620 A.2d 780 (1993) citing Breen v. Phelps,186 Conn. 86, 99, 439 A.2d 1066 (1982). Thus, "[a] judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Judge shopping is not to be encouraged and a decent respect for the views of his brethren on the bench is commendable in a judge." (Internal quotation marks omitted.) Lewis v. Gaming Policy Board,
supra, 224 Conn. 697.
Nevertheless, "[t]he law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked." (Internal quotation marks omitted.) Carothers v. Capozziello,215 Conn. 82, 107, 574 A.2d 1268 (1990). Therefore, "if the case comes before [a subsequent judge] regularly and he becomes convinced that the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." (Internal quotation marks omitted.) Lewis v. Gaming Policy Board, supra. 224 Conn. 697.
The reason a subsequent court is allowed to depart from an earlier ruling is simple: the court's function is to apply the law correctly. "In an appeal to [the appellate] court where views of the law expressed by a judge at one stage of the proceedings differ from those of another at a different stage, the important CT Page 5653 question is not whether there was a difference but which view was right." (Internal quotation marks omitted.) Breen v. Phelps,
supra, 186 Conn. 100. "From the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic grounds that it departed from the law of the case established by an earlier ruling." Id.
Courts are only permitted to depart from the law of a case if the departure concerns an interlocutory, as opposed to a final, order. Breen v. Phelps, supra, 186 Conn. 98-99. "A default is an interlocutory ruling. . . ." (Internal quotation marks omitted.) Segretario v. Stewart-Warner Corporation,9 Conn. App. 355, 359, 519 A.2d 76 (1986). "There is a clear distinction between a default, sometimes loosely referred to as a judgment of default, and a judgment upon default. A default is not a judgment. It is an interlocutory order of the court, the effect of which is to preclude the defendant from making any further defense in the case so far as liability is concerned. A judgment upon default, on the other hand, is the final judgment in the case which is entered after the default and after a hearing in damages." Esposito v. Pinecrest Country Club,Inc., 24 Conn. Sup. 81, 81-82, 186 A.2d 822 (1962). As a judgment upon default has not been entered in the present case, the court is permitted to depart from the previous ruling defaulting the defendants.
Furthermore, a court-imposed default, as a sanction pursuant to Practice Book § 17-19 (formerly § 351), unlike the awarding of attorneys fees, is an interlocutory order susceptible to the law of the case doctrine, and does not implicate res judicata. CFM of Connecticut, Inc. v. Chowdhury, 239 Conn. 375,397, 658 A.2d 1108 (1996). Although generally a sanctions order is a final judgment and will operate as res judicata with respect to that particular issue, a court may depart from the law of the case if the propriety of the sanctions order could have a conceivable effect on the ultimate outcome of the case. Id., 400-01. The defaulting of the defendants in the present case of course, has an effect on the outcome of the case that is more than merely conceivable. The court's order sanctioning the defendants by default in effect decided the outcome of the case by removing the defendants' ability to contest liability.
It is unquestioned that courts are permitted to default parties who do not comply with court orders. Practice Book §17-19. Yet, a court's exercise of that power is generally CT Page 5654 reserved for those instances in which the defendant fails to comply outright, not when compliance is made but the court deems it unacceptable. See Jaconski v. AMF, Inc., 208 Conn. 230,543 A.2d 728 (1988) (plaintiff nonsuited for failure to file revised complaint per court order); Rodriguez v. Mallory Battery Co.,188 Conn. 145, 448 A.2d 829 (1982) (plaintiff nonsuited for failure to file revised complaint per court order); Connecticut NationalBank v. Investors Capital Corporation, 29 Conn. App. 48,613 A.2d 1370, cert. denied, 224 Conn. 902, 615 A.2d 1044 (1992) (defendants defaulted and counterclaim nonsuited for failure to appear and file disclosure per court order); A. Secondino Sons,Inc v. LoRicco, 19 Conn. App. 8, 561 A.2d 142, aff'd on other grounds, 215 Conn. 336, 576 A.2d 464 (1989) (defendant defaulted for failure file answer per court order); cf. 2500 SS Limited Partnershipv. White, Superior Court, judicial district of New Haven at New Haven, Docket No. 328934 (August 19, 1996, Levin, J.) (17 CLR 449) (plaintiff nonsuited for failure to file more particular revised complaint per court order).
The decision in 2500 SS Limited Partnership is distinguishable because the court there specifically ordered the plaintiff to state its allegations in a more particular manner, and the plaintiff chose to disregard the court's directions. In the present case, the court on November 4, 1995 simply overruled the defendants' objection to the plaintiff's request to revise its special defenses. At no time did the court affirmatively order or direct the defendants to state their allegations in a more particular manner.
Additionally, it is important to distinguish the answer from the special defenses, because the defendants' answer was never the target of a request to revise. The plaintiff's motion for sanctions was filed because the plaintiff objected to the wording of two of the defendants' special defenses, not the defendants' answer. Thus, an appropriate sanction for the defendants' perceived lack of compliance was to strike those special defenses only, which the court in fact did. Because the plaintiff did not object to the defendants' answer, however, the court's rendering of a default against the defendants as a sanction appears unwarranted and excessive. The plaintiff's tactic of repeatedly moving for sanctions, instead of filing a motion to strike the allegedly objectionable contents of the defendants' special defenses, most likely led the court to default the defendants as to the entire case, a disproportionate sanction for the defendants' conduct. CT Page 5655
The plaintiff's objection to the defendants' filing of a notice of defenses is therefore sustained, but the court has, in what it believes to be an appropriate departure from the law of the case doctrine, reconsidered, sua sponte, the default rendered on April 14, 1997 and has vacated that default without prejudice. The court understands the effect of its present order to be that although the order defaulting the defendants is vacated and although the First and Fifth special defenses remain stricken, the Motion for Sanctions itself (#121), to the extent that it seeks a default, is still subject to being reclaimed by the plaintiff if he feels that he can present arguments, not already addressed in this opinion, that would presently support an order defaulting the defendants.
Jonathan E. Silbert, Judge